# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

HB CONSTRUCTION, INC.,

    Plaintiff,

vs.                                                        1:17-cv-01132-WJ-SMV

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT AND
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court upon Plaintiff's Motion for Partial Summary Judgment, filed October 3, 2018 **(Doc. 34)**, and Defendant's Motion for Summary Judgment, filed on November 2, 2018 **(Doc. 38)**. Having reviewed the parties' pleadings and applicable law, the Court finds that Plaintiff's motion is not well-taken and therefore, is **DENIED**. The Court further finds that Defendant's motion is well-taken and therefore, is **GRANTED**.

## BACKGROUND

This is an insurance case about whether certain amounts claimed as losses by HB Construction, Inc. ("Plaintiff"), and denied by Travelers Property Casualty Company of America ("Defendant"), fall within the scope of coverage. Plaintiff contracted with Defendant to insure a luxury condominium building it was constructing, the Carlisle. As the building was nearing completion, David Hickman burned it down and set a number of other buildings in Albuquerque on fire. David Hickman was convicted and sentenced in this district court for arson.

Plaintiff was reimbursed approximately $5,772,484.36. At issue is $567,828.00 in expenses claimed by Plaintiff but denied in part by Travelers (the "denied amount"). Although Defendant paid $100,000 under the "soft cost" coverage extension, it denied more than $400,000. It reasoned that the denied amounts either (1) were soft costs exceeding the soft costs sublimit, or (2) did not fall under the coverage provisions of the Builder's Risk policy because they accrued before the fire. *See* **Doc. 38-5, p. 4** ("the majority of those costs were incurred prior to the date of loss and thus those costs would be considered as part of the original project budget.")

The parties cross-moved for summary judgment on the breach of contract claim, focusing primarily on whether the denied amounts fall under coverage provisions or are otherwise excluded as soft costs. Defendant also moved for summary judgment on the remaining claims, arguing that they must fail as a matter of law if there was no breach of the policy.

**LEGAL STANDARD**

A motion for summary judgment may be granted only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. *Munoz v. St. Mary Kirwan Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id*. The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

**UNDISPUTED FACTS**

The parties stipulated to the majority of the facts below. Defendant also asserted additional facts, which Plaintiff did not dispute.

Defendant issued Policy Number QT-66-3E977885-TIL-16 to Plaintiff with policy period 11/18/2016 to 02/28/2017 ("the Policy"). Plaintiff was the general contractor for a condominium complex known as the Carlisle at 3600 Central Boulevard SE, Albuquerque, New Mexico 87113. A fire occurred at the Carlisle on November 23, 2016. Plaintiff submitted a claim to Defendant for the loss on November 23, 2016. The Policy's insuring agreement provides:

> **A. COVERAGE**
>
> We will pay for direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss.
>
> **1. Covered Property**
>
> Covered Property, as used in this Coverage Form, means the following types of property you own or for which you are legally liable, the value of which is included in the estimated "total project value" shown in the Declarations:
>
> **a. Permanent Works**
>
> Materials, equipment, machinery, supplies and property of a similar nature that will become a permanent part of the project described in the Declarations during completion of such project or that will be used or expended in the completion of such project.
>
> Completion of the project includes site preparation (including demolition of existing buildings or structures), fabrication, assembly, installation, erection, alteration, renovation and similar construction activities.
>
> **b. Temporary Works**
>
> Cofferdams, construction forms, cribbing, falsework, hoarding, scaffolds, fencing, signs, office trailers (and their "contents") and similar temporary buildings or structures incidental to completion of the project described in the Declarations.

The Policy specifically excludes "soft costs" beyond the Limits of Insurance shown on the Policy's Declaration page:

> **B. EXCLUSIONS**
>
> **2**. We will not pay for loss or damage caused by or resulting from any of the following:
> **a. Consequential Loss**
>
> **(1)** Delay, loss of use, or loss of market; or
> **(2)** Loss of income, **soft costs** or extra expenses except as specifically provided in this coverage part.

Limited coverage for "soft costs" is provided by the Coverage Extensions in Section A(4)(d) of the Policy:

> **4. Coverage Extensions**
>
> **d. Soft Costs**
> We will pay your "Soft Costs" during the "period of delay in completion". Such "soft costs" must result from direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss which delays the completion of the applicable project described in the "Declarations" beyond the "planned completion date".
>
> The Soft Costs Limit of Insurance is the most we will pay in any one occurrence under this Coverage Extension.

The Policy Declarations specifies a limit of $100,000.00 for soft costs. The Policy defines "soft costs" as follows:

> **F. DEFINITIONS**
> **10. "Soft Costs"** means your actual and necessary business costs in excess of your budgeted amount for the project consisting only of:
>
> **a**. Advertising and promotional expenses.
> **b.** Architect, engineer, designer and consultant fees.
> **c.** Costs resulting from the renegotiation of your sales contract, leases or construction loans.
> **d.** General overhead and administrative expenses, other than legal, accounting and professional fees.
> **e.** Insurance premiums.

      **f.** Interest on money borrowed to finance construction.
      **g.** Legal and accounting fees and other costs to renegotiate and prepare revised contracts and other documents.
      **h.** Permit and Inspection Fees.
      **i.** Realty taxes and realty assessments.

In the same section, the Policy provides the following definitions of the Policy terms "period of delay in completion" and "planned completion date":

> **6. "Period of delay in completion"** means the period of time that:
>
>     **a.** Begins with the "planned completion date" or after any applicable Soft Costs Waiting Period shown in the Declarations from the "planned completion date", whichever is later; and
>     **b.** Ends on the date when Covered Property should be completed using reasonable speed and similar quality.
>
> **7. "Planned completion date"** means the date the applicable project described in the Declarations would be put into operation or use for its intended purpose in the normal course of construction if loss of or damage to Covered Property from any of the Covered Causes of Loss had not occurred.

Plaintiff demanded payment of $567,828.00, on or about February 9, 2017. Defendant retained Madsen Kneppers & Associates to assist with damage determination and the projected costs to rebuild the project.

On March 3, 2017, Defendant provided a copy of Madsen Kneppers' repair estimate analysis. The Madsen Kneppers' repair spreadsheet attached to Defendant's March 3, 2017 email identified 12 categories of claimed expenses, across 13 line items, that Defendant identified as "soft costs." (*Id.*) These costs are located at lines 140-152 of the Madsen Kneppers' estimate and include: (1) management fees; (2) design and architecture fees; (3) land planning and surveying costs; (4) marketing expenses; (5) appraisal expenses; (6) interest costs on HB Construction's first mortgage; (7) interest costs on HB Construction's second mortgage; (8) accounting and bookkeeping expenses; (9) legal expenses; (10) bank charges; (11) building permit expenses; and (12) property taxes.

5

Defendant's March 3, 2017 email explained "Your policy includes as part of the core coverage a 'Soft Cost' coverage extension with a limit of $100,000. . . .As your total incurred 'Soft Costs' are in excess of the $100,000 limit I have included that limit as part of the Builders Risk loss adjustment as listed on the attached Statement of Loss." And, on March 3, 2017, Defendant, through its agent Dean Aliberti, denied payment of $567,828.00.

Plaintiff responded to Defendant in a letter dated April 25, 2017. Plaintiff contended that the soft costs were costs incurred within the budgeted amount for the project and were therefore not included within the Policy's definition of soft costs.

Defendant responded via a letter dated May 3, 2017 and reaffirmed its decision to advance the $100,000 sublimit for the claimed soft costs. Defendant asserted in the letter that the Policy excludes coverage for soft costs outside of the coverage extension. Defendant further explained its position that the disputed costs were largely incurred before the November 23, 2016 loss or were part of the original project budget, but that it anticipated Plaintiff incurring soft costs exceeding the sublimit and therefore tendered $100,000 on March 6, 2017.

Defendant issued payment to Plaintiff in the amount of $5,672,484.36 for the reconstruction of The Carlisle. Defendant has also tendered entire $100,000 Soft Costs sublimit to Plaintiff. Plaintiff filed suit on September 8, 2017.

## DISCUSSION

I. **New Mexico Insurance and Contract Law.**

The construction of an insurance policy is a matter of law which can be decided on summary judgment. *Adams–Arapahoe Joint School Dist. v. Continental Ins. Co.,* 891 F.2d 772, 774 (10th Cir. 1989); *Quaker State Minit–Lube, Inc. v. Fireman's Fund Ins. Co.,* 868 F.Supp. 1278, 1287 (D.Utah 1994), *aff'd,* 52 F.3d 1522 (10th Cir. 1995). Absent any ambiguity, the

construction of a contract is a question of law, and whether an agreement contains an ambiguity is also a question of law. *Boatwright v. Howard*, 102 N.M. 262, 263 (1985) (citing *Schaefer v. Hinkle*, 93 N.M. 129, 597 P.2d 314 (1979) ("It is the role of the courts to interpret and enforce a contract as written by the parties."). When the insurance policy is unambiguous, a court must enforce its terms. *Sanchez v. Herrera,* 109 N.M. 155, 159 (1989).

Because this is a diversity case based on New Mexico law, this Court must ascertain and apply New Mexico law in construing the insurance policy. In doing so, the Court must either follow the decisions of the New Mexico Supreme Court or attempt to predict what the New Mexico Supreme Court would do. *Coll v. First Am. Title Ins. Co.,* 642 F.3d 876, 886 (10th Cir. 2011); *Federated Serv. Ins. Co. v. Martinez*, 529 F. App'x 954, 957 (10th Cir. 2013) (if no controlling state supreme court case, district court must predict how such court would rule based on intermediate appellate decisions, decisions of other states, federal decisions, and general weight and trend of authority).

"New Mexico law treats an insurance policy as an ordinary contract to be construed according to customary principles of contract interpretation." *Carolina Cas. Ins. Co. v. Nanodetex Corp.*, 733 F.3d 1018, 1022 (10th Cir. 2013), *citing Rummel v. Lexington Ins. Co.,* 123 N.M. 752, 945 P.2d 970, 976 (1997). The policy should be construed as a complete and harmonious instrument. *See Erwin v. United Benefit Life Ins. Co*., 70 N.M. 138 (1962); *Safeco Ins. Co. of Am., Inc.*, v. *Mckenna,* 565 P.2d 1033, 1037 (N.M. 1977) (insurance policies "must be construed as intended to be a complete and harmonious instrument designed to accomplish a reasonable end."). The Court should construe a policy so as to give effect to every part. *Id.* Where a clause "read alone is clear and unambiguous . . . it is not necessary to read the coverages

7

together," because "there is a risk of creating, rather than identifying, ambiguity." *Battishill v. Farmers Alliance Ins. Co.*, 2006–NMSC–004, ¶ 16, 139 N.M. 24.

## II. **Breach of Contract Claim.**

Plaintiff argues that Defendant breached the policy by denying coverage for certain amounts. These denied amounts include management fees, marketing expenses, interest on mortgages, accounting, bookkeeping, and legal fees, and property taxes, amongst others. The parties appear to agree that these claimed expenses were generally incurred before the date of the fire or were part of the original project budget.[1]

### A. **Builder's Risk Policies**

The policy at issue is a builder's risk policy. **Doc. 40-1, p. 11.** " 'Builder[']s risk' insurance is a unique form of property insurance that typically covers only projects under construction, renovation, or repair and insures against accidental losses, damages or destruction of property for which the insured has an insurable interest.... The purpose of builder's risk insurance is to compensate for loss due to physical damage or destruction caused to the construction project itself." *Fireman's Fund v. Structural Sys. Tech., Inc.,* 426 F.Supp.2d 1009, 1025 (D. Neb. 2006), *quoted in One Place Condo., LLC v. Travelers Prop. Cas. Co. of Am.*, 2015 WL 2226202, at *3 (N.D. Ill. Apr. 22, 2015).

### B. **Denied amounts are not "soft costs" under the policy.**

Plaintiff argues that the denied amounts are not excluded from coverage as "soft costs," because they (1) were budgeted in the project and (2) were not incurred because of any delay caused by the fire. Defendant argues in part that the denied amounts are "soft costs" and were

---

[1] Plaintiff has not asserted any undisputed fact or any evidence in the record that the denied amounts occurred after the date of fire, or that they were incurred as a result of the fire. Rather, Plaintiff appears to admit that the denied amounts were within the "total project budget" and therefore would have been incurred whether or not the fire occurred.

appropriately denied because the applicable $100,000 sublimit had been reached. The Court agrees that these denied amounts do not fall under any soft cost exclusion or sublimit.

There are two main provisions governing "soft costs" under the policy. One provision *excludes* soft costs from coverage, unless a coverage extension is purchased. *See* **Doc. 40-1, p. 27** ("We will not pay for loss or damage caused by or resulting from any of the following: (a) Consequential Loss… soft costs or extra expenses except as specifically provided in this Coverage Part."). Plaintiff purchased a coverage extension for soft costs. *Id.*, **p. 20** ("We will pay your "soft costs" during the period of delay in completion. Such "soft costs" must result from direct physical loss of or damage to the Covered Property caused by or resulting from a Covered Cause of Loss which delay the completion of the applicable project described in the Declarations beyond the 'planned completion date.'"). The limit for that coverage extension is $100,000. *Id.*, **p. 13.**

However, the policy defines "soft costs" as "your actual and necessary business costs *in excess of your budgeted amount* for the project, consisting only of…" **Doc. 40-1, p. 36** (emphasis added). The policy then enumerates certain costs and expenses which qualify as "soft costs." *Id.* The denied amounts would generally fall under these enumerated categories. However, the parties appear to agree that the denied amounts were not "in excess of [the] budgeted amount for the project." *Id.* Therefore, the denied amounts are not "soft costs" under the policy and are not excluded from coverage.

### C. <u>Denied amounts are not within scope of coverage</u>.

However, as Defendant argues, Plaintiff's breach of contract claim fails because the denied amounts do not fall under any coverage provision. Generally, the plaintiff bears the burden to show that the denied amounts fall within the coverage grant. *Leafland Group-II,*

*Montgomery Towers Ltd. Partnership v. Insurance Co. of Am.*, 881 P.2d 26, 29 (N.M. 1994) ("while insurance policies may in some circumstances be construed against the insurer, the insured must still show that its claim falls within the coverage provided by the policy."). Plaintiff fails to show that these denied amounts fall under any coverage provision or the coverage grant.

Plaintiff argues that the denied amounts fall under a broad coverage grant. The Coverage provision begins: "we will pay for physical loss of or damage to the Covered Property *caused* by or *resulting from* a Covered Cause of loss." **Doc. 40-1, p. 18** (emphasis added). The parties agree that the Covered Property is the Carlisle, and the Covered Cause of Loss is the fire.

The above general coverage provision, by its express terms, only covers losses or damage that are *caused by*, or *result from*, the fire. *Id.*, **p. 18**. The Seventh Circuit interpreted a similar Travelers provision the same way, concluding that this General Coverage Provision in a Travelers' Builder's Risk policy applied to repair the damage to the property. *See Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 361–62 (7th Cir. 2017) (in interpreting similar Travelers contract, concluding soft costs do not fall under "direct physical loss").

Here, Plaintiff necessarily proceeds on the theory that the denied amounts were part of the total project budget or accrued *before* the date of the fire.[2] Otherwise, the denied amounts would clearly fall under the soft cost provision and be barred. *See* **Doc. 40-1, p. 36** (listing types of soft costs). Moreover, because Plaintiff admits that these expenses were within the original budget, it appears to admit that they were not incurred *as a result of* the fire. Therefore, it appears these denied amounts would have been incurred whether or not the fire occurred. Since

---

[2] Plaintiff also did not contest Defendant's assertion in the May 3, 2017 letter and in briefing in this case that the denied amounts were generally incurred *before* the date of loss. *See, e.g.,* **Doc 38-5, p. 4; Doc. 37, Doc. 47.**

Plaintiff makes no attempt to show that the denied amounts were losses caused by the fire, its claim must necessarily fail.³

To the extent Plaintiff argues that some of the denied amounts in fact accrued *after* the fire but *before* the planned completion date, Plaintiff failed to assert any undisputed facts supporting that argument. Therefore, as an alternative ground for denial, Plaintiff failed to carry its summary judgment burden by failing to present any undisputed facts on the nature of the denied amounts. Even if Plaintiff did properly assert such facts, it appears that the fire would not have caused those costs to accrue, as they were already budgeted.

Plaintiff also argues that, when read as a whole, the policy was intended to provide coverage for these denied amounts. The Court disagrees. Rather, the intent of the parties was to cover damages or losses *caused by* the fire. For example, the valuation provision – a provision that determines how to calculate the amount of loss – omits any reference to the denied amounts. **Doc. 40-1, p. 34-35.** *See Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 362 (7th Cir. 2017) (district court appropriately considered the Valuation Condition in similar Travelers' policy to determine scope of loss). Rather, the valuation provision generally looks to the cost to *replace* the property, with certain limitations. The valuation provision considers general and specific overhead as part of the value of the Covered Property "only as related directly to the repair or replacement of the covered property." **Doc. 40-1, p. 35.** Therefore, the clear purpose of the policy is to provide Plaintiff with at least some reimbursement for repairing or replacing the damaged property. Here, Plaintiff admits the denied amounts were within the total project budget, and therefore would have been incurred whether or not the fire occurred.

---

³ Plaintiff summarily argues that Defendant did not provide this basis for denying the disputed amounts in its May 3, 2017 letter. The Court disagrees. Travelers recited this exact reasoning in that letter. *See* **Doc. 38-5, p. 4**.

Therefore, Plaintiff failed to meet its burden that the claimed loss falls within the policy's coverage, and its breach of contract claim fails. *See Leafland Group-II, Montgomery Towers Ltd. Partnership v. Insurance Co. of Am.*, 881 P.2d 26, 29 (N.M. 1994) ("while insurance policies may in some circumstances be construed against the insurer, the insured must still show that its claim falls within the coverage provided by the policy."); *Chronister v. State Farm Mut. Auto. Ins. Co.*, 381 P.2d 673, 675 (N.M. 1963) ("The burden of proof is on the plaintiff to establish the policy's coverage of the injurious event."); *Barey v. Rice Ins. Servs. Co., LLC*, 2016 WL 3638527, at *7 (D.N.M. 2016) (insured must show that its claim falls within coverage provided by policy).

### D. **Plaintiff's arguments are unavailing.**

Plaintiff argues that the broad grant of coverage for "direct physical loss or damage… caused by or as a result of a Covered Cause of Loss" is ambiguous as to what types of loss are covered. **Doc. 40-1, p. 18.** The Court disagrees. As explained above, the coverage grant is clear that it only covers losses that *result from* or are *caused* by the fire. *See United Nuclear Corp. v. Allstate Ins. Co.*, 285 P.3d 644, 647–48 (N.M. 2012) (reviewing courts should not "create ambiguity where none exists, and an ambiguity does not exist merely because the parties hold competing interpretations" about the meaning of a policy provision); *see also Safeco Ins. Co. of Am., Inc. v. McKenna,* 90 N.M. 516, 520 (1977) ("Resort will not be made to a strained construction for the purpose of creating an ambiguity when no ambiguity in fact exists."). The remaining provisions in the policy support this interpretation. For example, the valuation provision includes overhead "only as related directly to the repair or replacement of the Covered Property." **Doc. 40-1, p. 35.** Therefore, the Court concludes that the policy is not ambiguous.

Plaintiff alternatively argues that the denied amounts must be included in the scope of coverage, because they are not specifically excluded from coverage, while "soft costs" are excluded. The Court disagrees. Here, there was no need to exclude the denied amounts because they never fell within a coverage provision. *See, e.g., Vision One, LLC v. Philadelphia Indem. Ins. Co.*, 276 P.3d 300, 311 (Wash. 2012) ("Vision's argument fails because it wrongly assumes the policy covered financial losses in the first instance. While Vision's policy was an all-risk policy, coverage extended only to 'physical' losses to covered 'property.' It is of no consequence that soft costs were not specifically enumerated under the delay-and-consequential-loss exclusion. Because the policy did not cover soft costs, there was no need to exclude them."). Soft costs, however, fall within the coverage grant because they occurred as a result of the fire, and therefore required an exclusion.

### III. **Remaining claims are dismissed.**

Because the breach of contract claim fails, the remaining claims predicated on that breach must also be dismissed. The remaining claims include the following: bad faith, Unfair Practices Act, unfair trade practices, negligence, negligence per se, and breach of the implied covenant of Good Faith and Fair Dealing. *See, e.g., Jackson Natl. Life Ins. Co. v. Receconi*, 827 P.2d 118, 134 (N.M. 1992) (bad faith requires unfounded refusal to pay); *American Employers' Ins. Co. v. Crawford*, 533 P.2d 1203, 1209 (N.M. 1975) ("Since Crawford had no coverage, we fail to understand how the Company acted negligently, or displayed bad faith in refusing to pay $100,000 which it had no duty to pay."); *Aztec Abstract & Title Ins., Inc. v. Maxum Specialty Grp.*, 302 F.Supp.3d 1274, 1286 (D.N.M. 2018) ("[A] court should dismiss bad faith and New Mexico Insurance Practices Act claims if there is ... no right to indemnification under an insurance policy."); *New Mem'l Assocs. v. Credit Gen. Ins. Corp.*, 973 F. Supp. 1027, 1031

(D.N.M. 1997) (dismissing insured's extra-contractual statutory claims upon finding that insurers had properly denied coverage); *Delgado v. Liberty Mut. Fire Ins. Co.*, 2017 WL 6375623, at *9 (D.N.M., 2017) (insurer entitled to summary judgment on bad faith claim because it had no contractual duty to pay insured benefits under policy); *United Rentals Nw., Inc. v. Federated Mut. Ins. Co.*, 2009 WL 10666372, at *3 (D.N.M. June 5, 2009) ("Because Federated did not have a contractual duty to pay United Rentals under an insurance policy, Federated cannot be held liable for an unfair claims practice."); *New Memorial Assocs. v. Credit Gen. Ins. Corp.*, 973 F. Supp. 1027, 1031 (D.N.M. 1997) (dismissing insured's claims for violation of New Mexico Unfair Practices Act and New Mexico Insurance Practices Act based on finding that insurers had properly denied coverage). *See also Barey v. Rice Ins. Servs. Co., LLC*, 2016 WL 3638527, at *10 (D.N.M. Mar. 31, 2016) (after finding there was no coverage and dismissing breach of contract claim, dismissing remaining claims, including UPA claim and bad faith claim). Plaintiff does not appear to contest dismissal of these claims. *See* **Doc. 45, 47.**

## CONCLUSION

Although Plaintiff is correct that the denied amounts are not "soft costs" excluded under the policy, Plaintiff failed to show that the denied amounts fall within the coverage provided by the policy. Therefore, the breach of contract claim and the remaining claims must be dismissed.[4] A separate judgment in favor of Defendant against Plaintiff shall be issued.

**IT IS THEREFORE ORDERED** that Plaintiff's Partial Motion for Summary Judgment **(Doc. 34)** is hereby **DENIED** for reasons described in this Memorandum Opinion and Order.

---

[4] To the extent Plaintiff objects that the Court is granting Defendant summary judgment on a basis not raised in its motion, the Court disagrees. Defendant specifically raised this argument as a reason to grant summary judgment in its motion. *See* **Doc. 38, p. 18** ("But even if they were not expressly excluded from coverage, these costs would not be covered because they are not direct physical loss of or damage to the Covered Property."). Moreover, Defendant extensively argued this position in its response to Plaintiff's Motion, **Doc. 37**, and therefore Plaintiff had sufficient notice to address it.

14

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment **(Doc. 38)** is hereby **GRANTED** for reasons described in this Memorandum Opinion and Order.

_____
CHIEF UNITED STATES DISTRICT JUDGE